# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION


BRIAN K. BOWMAN,

        Plaintiff

        v.                         C-1-06-756

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant


        This matter is before the Court upon the Report and Recommendation of the United States Magistrate Judge (doc. no. 15), defendant's objections thereto (doc. no. 16) and plaintiff's reply (doc. no. 17). Plaintiff, a Disability Insurance and Supplemental Security Income claimant, brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the defendant denying plaintiff's application for disability insurance benefits. In his Report and Recommendation, the Magistrate Judge concluded that the defendant's decision denying plaintiff disability benefits is not supported by substantial evidence and therefore recommended that the case be reversed and remanded for further consideration. The Magistrate Judge recommended that on remand, the Commissioner shall obtain a consultative examination and functional assessment of plaintiff's physical abilities in order to properly determine plaintiff's RFC, and the ALJ shall properly weigh the medical evidence of record and give specific reasons for the weight given to a treating source's medical opinion.

## I.

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g).  At issue is whether the administrative law judge ("ALJ") erred in finding that plaintiff was not disabled and therefore not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

Plaintiff filed applications for DIB and SSI on September 3, 2004, alleging disability since August 20, 2004, due to low back pain and post operative residual impairments.  His application was denied initially and on reconsideration.  Plaintiff then requested a hearing *de novo* before an ALJ.  An evidentiary hearing, at which plaintiff was represented by counsel, was held on November 28, 2005.

On December 7, 2005, the ALJ entered his decision denying plaintiff's claim.  That decision stands as defendant's final determination consequent to denial of review by the Appeals Council on October 3, 2006.

Upon **de novo** review of the record, this Court agrees with the Magistrate Judge that : (1) the ALJ erred in weighing the medical evidence; and (2) the ALJ failed to properly evaluate the opinions of plaintiff's treating physician and failed to give good reasons for rejecting that opinion; and concludes the decision of the defendant denying disability benefits is not supported by substantial evidence and is contrary to law.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

Reviewing the record as a whole, this Court concludes the ALJ erred in weighing the medical opinions of record. Specifically, the ALJ erred in failing to give controlling weight, and/or give specific reasons for affording no weight, to the functional assessments of Dr. Ward, plaintiff's primary care physician.

It is well settled that the opinions of treating physicians are generally given substantial, if not controlling, deference. 20 C.F.R. § 404.1527(d)(2) (2004); *Warner v. Comm'r of Social Sec.,* 375 F.3d 387, 390 (6th Cir. 2004); *Roush v. Barnhart,* 326 F.Supp. 2d 858, 862 (S.D. Ohio 2004)). The SSA promulgated this regulation in 1991 because:

> these sources are likely to be the medical professional most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Comm'r of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting from 20 C.F.R. § 404.1527(d)(2)). Although the weight given to a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record (*see* 20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)), a summary by an attending physician made over a period of time need not be accompanied by a description of the specific tests in order to be regarded as credible and substantial. *Cornett v. Califano,* No. C-1-78-433 (S.D. Ohio Feb. 7, 1979) (LEXIS, Genfed library, Dist. file).

If not contradicted by substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435; *see also Cohen v. Sec'y of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992).

If a treating physician's opinion is contradicted , the opinion is not to be dismissed, and it may be entitled to deference. *Roush*, 326 F.Supp. 2d at 862. In weighing the various opinions and medical evidence, the ALJ must consider pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6).

Here, the ALJ rejected the treating physician's opinion; therefore, the ALJ must "give good reasons" for not giving weight to that opinion in the context of a disability determination. *Wilson*, 378 F.3d at 544. Pursuant to 20 C.F.R. § 440.1527(d)(2), a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (1996); *see also Wilson*, 378 F.3d at 544.

Here, the record reflects that Dr. Ward treated plaintiff for a variety of ailments beginning in January 2001. In May 2004, Dr. Ward noted that an EMG had showed L5 radiculopathy, and he diagnosed plaintiff with sciatica. He sent plaintiff to Dr. Guanciale for a spine surgery consultation.

X-rays likewise taken on May 17, 2004 were positive for spina bifida of S-1 with probable spondylolysis of L5, minimal retrolisthesis of L4 posterior on L5, and narrowing and vacuum disc at L5-S1 compatible with chronic degenerative disc disease increased from a comparison film of 1/01. An MRI performed on May 27, 2004 was interpreted as severe bulging disc at L5-S1 with infra-foraminal right L5 nerve root compression, possible spondylolysis defect at that level as well, with minor degenerative changes elsewhere in the lumbar spine.

Dr. Guanciale evaluated plaintiff in July 2004 and diagnosed acute or chronic severe right L5 radiculopathy with partial foot drop and severe motor and sensory deficits; bilateral L5 chronic spondylolysis; L5-S1 lumbar spondylolisthesis; right paracentral and foraminal L5-S1 lumbar disc herniation; moderate to severe lumbar discogenic disease at the L5-S1 level; severe right L5-S1 foraminal stenosis associated with the foregoing; moderate left L5-S1 foraminal stenosis associated with the foregoing; severe mechanical back pain associated with the foregoing; mild T11-12 thoracolumbar disc disease; mild L2-3 lumbar disc disease; history of hypertension; severe disability associated with the foregoing unresponsive to conservative treatment to date; and cigarette smoking.

Dr. Guanciale and plaintiff discussed continued conservative treatment versus consideration of undergoing an operative attempt involving a rather complex L5-S1 level lumbar operative decompression, partial reduction of spondylolisthesis, posterior lumbar interbody fusion, and posterior lumbar instrumented fusion stabilization procedure. Plaintiff wanted to proceed with surgery, and, in September 2004, Dr. Guanciale performed a L5-S1 laminectomy, discectomy and fusion.

In February 2005, Dr. Ward completed a "Physical Assessment of Ability to do Work-Related Activities (Physical)" form, wherein he indicated that plaintiff could lift and carry a maximum of twenty-five pounds, stand and walk a total of one hour in an eight-hour workday, and sit a total of two hours in an eight-hour workday, and also had other physical limitations. In support of his assessment, Dr. Ward noted that plaintiff had steel rods going down his back, and also referred to patient's history and physical examination. He indicated that various physical functions caused pain.

In November 2005, because of the persistency of plaintiff's symptoms, Dr. Ward referred plaintiff to Dr. Portugal, another orthopedic specialist. Plaintiff was first seen by Dr. Portugal on November 8, 2005. Dr. Portugal noted that an October 2005 MRI "shows L5-S1 with bilateral laminectomy changes and fusion with pedicale scres with Grade I anterolisthese, L5 spondylolysis and right paracentral and foraminal disc protrusion with right greater than left foraminal narrowing; L4-L5 with moderate facet arthropathy." Dr. Portugal performed a right L5 transforaminal epidural steroid injection on November 14, 2005, two weeks before the hearing before the ALJ in this matter.

Additionally, in November 2005, Dr. Ward noted that plaintiff was essentially *status quo*, per his report. (Tr. 244). He completed another "Medical Assessment of Ability to do Work-Related Activities (Physical)" form and indicated that plaintiff could lift and carry a maximum of five pounds, stand and walk a total of one to two hours in an eight-hour workday, and sit a total of one hour in an eight-hour workday, and also had other physical limitations. (Tr. 230-32). When asked for medical findings that supported his assessment, Dr. Ward reported that plaintiff had chronic low back pain with recent discectomy and fusion and had bone fragments that had to be removed from his nerve body. He indicated that plaintiff was in constant pain and bending, sitting, twisting, and lifting caused an increase in pain level. Dr. Ward noted that plaintiff's lumbar fusion caused limited movement and chronic pain, and that performance of various physical functions exacerbated his pain. Dr. Ward also stated that plaintiff had degenerative disc disease of the lumbar spine and his pain level was usually at a level of eight on a scale of one-to-ten. He indicated that plaintiff also experienced leg and foot pain as a result of the lumbar spine problems.

At the hearing, based on the functional limitations outlined by Dr. Ward, the vocational expert testified that plaintiff would be unemployable. However, contrary to the opinion of Dr. Ward that plaintiff is unable to work, the ALJ concluded that plaintiff is capable of performing a range of sedentary work. The ALJ rejected Dr. Ward's assessments because they were "poorly supported by the objective medical evidence" and "appear to be based primarily on the claimant's subjective complaints. . . ." The ALJ further noted that Dr. Ward's functional limitations are inconsistent with other significant evidence in post-operative examinations by the specialists, Dr. Guanciale and Dr. Portugal. The ALJ also found that Dr. Ward is not a specialist but rather the claimant's primary care physician, and "it appears that he essentially asked the claimant what to put down on the forms without exercising his professional medical judgment."

Here, however, Dr. Ward treated plaintiff from January 2001 through February 2005. The treatment history includes monthly/bi-monthly visits, examinations and clinical testing, and various prescribed medications. Moreover, due to the persistency of plaintiff's symptoms, he referred plaintiff to Dr. Guanciale, an orthopedic surgeon, in June 2004 and to Dr. Portugal, an orthopedic and pain specialist, in November 2005. Dr. Ward's treatment notes and assessments of plaintiff's functional limitations contradict the notion that plaintiff is capable of performing a range of sedentary work.

The Court does not dispute that it is the ALJ's prerogative to resolve conflicts in the medical evidence. When that conflict involves the opinions of treating physicians and a non-examining state agency physician, the ALJ may not ignore the law requiring special deference to the opinions of treating physicians when resolving the conflict. "The treating

physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The RFC assessment provided by Dr. McCloud, a non-examining state agency physician who reviewed the evidence of record, concluded that plaintiff was capable of performing light work.[1]  The ALJ did not accept this as a credible assessment but concluded without any medical opinion supporting his conclusions that plaintiff was limited to a range of sedentary work.  Therefore, in making this finding, the ALJ, in part, impermissibly acted as his own medical expert. *See Rousey v. Heckler,* 771 F.2d 1065, 1069 (7th Cir. 1985); *Kent v. Schweiker,* 710 F.2d 110, 115 (3d Cir. 1983); *Lund v. Weinberger,* 520 F.2d 782, 785 (8th Cir. 1975).  While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, he is not permitted to make his own evaluations of the medical findings. *See McBrayer v. Secretary of Health & Human Servs.,* 712 F.2d 795, 799 (2d Cir. 1983); *Filocomo v. Chater,* 944 F. Supp. 165, 170 (E.D.N.Y. 1996).

Thus, after careful review of the medical evidence, this Court finds the ALJ's decision that plaintiff is capable of performing a range of sedentary work is not supported by substantial evidence.  In fact, the record does not contain any consultative examinations,

---

[1]  In March 2005, Dr. Holbrook, a state agency physician, reviewed the record evidence and affirmed Dr. McCloud's assessment that plaintiff could perform light exertional work.  (Tr. 182.)

and neither Dr. Guanciale, nor Dr. Portugal, provided assessments of plaintiff's functional limitations.  Accordingly, this matter must be remanded for further fact-finding in order to obtain an additional consultative examination and functional assessment to properly determine plaintiff's RFC.

## IV.

A sentence four remand provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and where further fact-finding is necessary.  *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted).  In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175.  "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Culbertson v. Barnhart,* 214 F. Supp. 2d 788, 795 (N.D. Ohio 2002) (*quoting Willis v. Secretary of Health & Human Servs., 727 F.2d 551 (6th Cir. 1984)*).

Based upon the foregoing,  remand is appropriate in this matter.

## ORDER

Upon a **de novo** review of the record, the Court finds that the Judge has accurately set forth the controlling principles of law and properly applied them to the particular facts of this case and agrees with the Judge.  Accordingly, the Court **ADOPTS** the Report and Recommendation of the United States Magistrate Judge.   The decision of the

Commissioner to deny plaintiff DIB and SSI is **REVERSED** and this matter is **REMANDED** under sentence four of 42 U.S.C. § 405(g).

On remand, the Commissioner shall obtain a consultative examination and functional assessment of plaintiff's physical abilities in order to properly determine plaintiff's RFC, and the ALJ shall properly weigh the medical evidence of record and give specific reasons for the weight given to a treating source's medical opinion.

This case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

s/Herman J. Weber
Herman J. Weber, Senior Judge
United States District Court
